IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2013 OCT 23 PM 12: 31
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CAUSE NO. A-13-CR-240-LY |
| | § | |
| JOSE LUIS MALDONADO-SANCHEZ | § | |

## MEMORANDUM OPINION AND
## ORDER DENYING MOTION TO DISMISS INDICTMENT

Before the court is the above styled and numbered cause in which Defendant Jose Luis Maldonado-Sanchez is charged by indictment with the offense of illegal reentry by a deported alien. *See* 8 U.S.C. § 1326(a). By Motion to Dismiss Indictment and Memorandum in Support filed August 22, 2013, Maldonado-Sanchez collaterally attacks the Order of the Immigration Judge rendered on June 2, 2009 ("Deportation Order"), contending that the removal proceeding was fundamentally unfair and that Maldonado-Sanchez suffered actual prejudice, therefore, the Deportation Order is invalid and this court cannot consider the order with regard to the instant indictment (Clerk's Document No. 21). *See* 8 U.S.C. § 1326(d) ("Section 1326(d)"); *United States v. Medoza-Lopez*, 481 U.S. 828, 830 (1987) (alien charged with illegal reentry after deportation may collaterally challenge validity of deportation in subsequent criminal prosecution); *United States v. Encarnacion-Galvez*, 964 F.2d 402 (5th Cir. 1992) (alien must show sustained actual prejudice–there was reasonable likelihood that but for errors complained of defendant would not have been deported). Maldonado-Sanchez argues that in the absence of a previous valid deportation order, the current indictment charging him with illegal reentry of a deported alien must be dismissed.

Maldonado-Sanchez contends that the Deportation Order was obtained in violation of his due process rights and his right to effective assistance of counsel in violation of the Fourth and Sixth

Amendments to the United States Constitution because he was denied the opportunity to obtain counsel and to apply for voluntary departure. Additionally, Maldonado-Sanchez alleges that the immigration judge wrongly relied on his criminal history in ordering removal.

The Government by Response to the Defendant's Motion to Dismiss and Supplemental Response to the Defendant's Motion to Dismiss, argues that the transcript from the June 2, 2009 removal proceeding reflects that the proceeding was not fundamentally unfair, therefore, the Deportation Order is valid and may be considered by the court (Clerk's Document Nos. 22 & 27).

On October 18, 2013, the court held a hearing on Maldonado-Sanchez's motion at which Maldonado-Sanchez appeared and all parties were represented by counsel.[1] Having considered Maldonado-Sanchez's motion, the Government's responses, the testimony and the exhibits admitted at the hearing, including the translation and transcription of the 2009 removal proceeding, the arguments of counsel, the case file, and the applicable law, the court will deny the motion to dismiss the indictment.

An alien may not challenge the validity of a deportation order unless the alien demonstrates:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

Section 1326(d). To successfully challenge a removal order, the alien bears the burden to show that the removal hearing was unfair, that the alien had no right to challenge the hearing by means of

---

[1] The court convened a hearing on the motion on August 30, 2013, however, the court recessed in order that the Government could obtain a certified copy of the June 2, 2009 proceeding.

judicial review of the order, and procedural deficiencies caused the alien actual prejudice. *See United States v. Lopez-Vasquez*, 227 F.3d 476, 483 (5th Cir. 2000).

The Warrant of Arrest/Notice to Appear dated May 12, 2009, reflects that Maldonado-Sanchez was served with a notice to appear before an immigration judge and bond was set at $25,000. Additionally, the record includes a Notice of Custody Determination, which provides that "released under bond in the amount of $25,000" and "You may not request a review of this determination by an immigration judge because the Immigration and Nationality Act prohibits your release from custody." Maldonado-Sanchez "acknowledged receipt of this notification" by signing and dating the notice.

The transcript of Maldonado-Sanchez's June 2, 2009 removal proceeding reflects that the immigration judge asked Maldonado-Sanchez whether he had an attorney. When Maldonado-Sanchez responded that he did not, the judge asked if he would like more time to find an attorney; Maldonado-Sanchez responded that he did not want additional time to get an attorney.[2]

Maldonado-Sanchez admitted to being a citizen of Mexico and stated that he had entered the United States, without inspection, near Eagle Pass, Texas, in 2000. The judge asked if either his mother or father were United States citizens, to which Maldonado-Sanchez replied, "no". The judge also asked Maldonado-Sanchez, "Do you have a family member who is a United States citizen or a permanent legal resident in the United States?" Maldonado-Sanchez responded, "only resident". The judge inquired further asking, "And how is that person related to you?" Maldonado-Sanchez replied that they were "uncles, aunts, [and] cousins."

---

[2] Based on the Government's exhibits, Maldonado-Sanchez had been provided and had signed in acknowledgment a "List of Free Legal Service Providers," which was a listing attorneys who might be able to assist Maldonado-Sanchez during his removal proceeding.

Maldonado-Sanchez also stated that his first illegal entry into the United States occurred in 1992. The judge asked if Maldonado-Sanchez would prefer a voluntary or formal removal and Maldonado-Sanchez replied that he would prefer a voluntary removal. The Government's attorney at the removal proceeding informed the judge that Maldonado-Sanchez had two prior removals from the United States. The judge asked Maldonado-Sanchez about this and Maldonado-Sanchez responded that he had entered the United States illegally on three occasions. The immigration judge then stated that he would "deny [the] request to voluntarily leave based on . . . [Maldonado-Sanchez's] 3 illegal entries," ordered that Maldonado-Sanchez be removed from the United States, and denied Maldonado-Sanchez's request for voluntary departure. The immigration judge expressly held that the 3 illegal entries, "outweighs the fact that you have aunts, uncles, [] and cousins who are permanent legal residents in the United States." The immigration judge asked Maldonado-Sanchez if he would like to appeal the removal order to a higher court, to which Maldonado-Sanchez replied "no".

The Deportation Order explicitly denied Maldonado-Sanchez's request for voluntary departure and ordered that he be removed to Mexico. Further the Deportation Order notes that there would be "no appeal."

At the hearing before this court, Maldonado-Sanchez testified that during the 2009 removal hearing, the immigration judge never informed him that he could make a request to reduce his bond so that he could possibly raise the funds and be released pending the hearing. However, he agreed that he had signed and acknowledged receipt of the notice that he could not be released from custody. With regard to his claim that the judge failed to give him an opportunity to obtain legal counsel, Maldonado-Sanchez testified that he did not recall signing the list of free legal advisors he

4

was given ahead of the 2009 deportation hearing. Further, Maldonado-Sanchez testified that during the removal hearing, although the immigration judge asked whether he had relatives who were United States citizens, the judge never asked specifically whether Maldonado-Sanchez had children who were United States citizens. Maldonado-Sanchez testified that in 2009 he had a minor daughter who was a United States citizen. Additionally, his wife became a legal resident in 2011. Maldonado-Sanchez explained that he understood the immigration judge's question about whether he had relatives that were United States citizens to only relate to his parents, aunts, uncles, or cousins and not to his children.

The court finds that Maldonado-Sanchez has failed to establish that the June 2, 2009 removal proceeding was fundamentally unfair. Contrary to Maldonado-Sanchez's assertion that the immigration judge wrongly based his removal on his criminal history, the record reflects that the immigration judge expressly stated on the record that he was ordering Maldonado-Sanchez removed because of his history of removals and illegal reentries, not any criminal history.[3] Further, the record reflects that ahead of the 2009 hearing, it mattered not what bond amount was set, Maldonado-Sanchez would not be released from custody. Further, with regard to Maldonado-Sanchez's opportunities to obtain counsel, Maldonado-Sanchez received a list of free legal service providers and the immigration judge, on the record during the removal proceeding, directly inquired of Maldonado-Sanchez whether he needed more time to obtain legal counsel. After being given opportunities to obtain legal counsel, Maldonado-Sanchez decided to proceed at the removal hearing without legal counsel. Finally, with regard to Maldonado-Sanchez's complaint that the immigration

_____

[3] At the hearing before this court, the Government stipulated that Maldonado-Sanchez had no criminal history.

judge never asked him directly if he had children who were United States citizens, the court finds that argument is without merit. The immigration judge inquired about whether Maldonado-Sanchez had relatives who were legally in the United States or were United States citizens on three occasions during the hearing, and Maldonado-Sanchez never mentioned his child. The court will deny Maldonado-Sanchez's motion.

**IT IS ORDERED** that Motion to Dismiss Indictment and Memorandum in Support filed August 22, 2013 (Clerk's Document No. 21) is **DENIED**.

This cause remains set for jury selection and trial at 9:00 a.m. on Monday, November 4, 2013, in Courtroom 7, Seventh Floor of the United States Courthouse, 501 West 5th Street, Austin.

SIGNED this _____23rd_____ day of October, 2013.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE